UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARK WILLIAMS, as Personal Representative of the Estate of Shane P. Williams, and MARK WILLIAMS, a married man as his separate property,<br><br>Plaintiff,<br><br>v.<br><br>KITSAP COUNTY, a municipal corporation; BEN HERRIN and JANE DOE HERRIN, husband and wife, and the marital community comprised thereof; and PAUL WOODRUM and JANE DOE WOODRUM, husband and wife, and the marital community comprised thereof,<br><br>Defendants. | Case No. C08-05430RBL<br><br>ORDER DENYING DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment, seeking dismissal on Plaintiff's *Monell* claims against Kitsap County ("County") [Dkt. # 4]. Because the parties have introduced sufficient evidence to permit a rational trier of fact to find that the County's failure to train officers on use of deadly force amounted to a municipal policy of deliberate indifference to constitutional rights, the Defendant's motion is DENIED.

ORDER
Page - 1

**I. Background**

This matter arose from an early morning confrontation between Shane Williams and Kitsap County Sheriff's Deputies Ben Herrin and Paul Woodrum on May 16, 2006, which ultimately led to Williams' death.

Williams lived with his mother and her husband at 3742 'E' Street in Bremerton, Washington. [Decl. Of Gould, Dkt. # 12]. At 4:00 in the morning on May 16, 2006, Williams placed a call to 911 ("CenCom") and stated "I need a cop at 3742 'E' Street." Cencom notified Deputy Ben Herrin, who proceeded to the 'E' Street address.

Deputy Herrin testified that he located the 'E' Street residence and observed Williams sitting on the front porch. He parked his car and approached Williams. Herrin alleges that Williams threw an object towards him and was holding a machete. [Herrin Tr. 32-33]. Herrin claims that Williams began to approach him, and that Herrin backed away until he reached the rear of his patrol car. [*Id.* at 33-34]. Herrin asserts that he told Williams to drop the weapon and get on the ground. [*Id.* at 38].

Deputy Woodrum arrived. Herrin asked if he had a Taser, and Woodrum replied that he did not. [*Id.* at 45]. Both deputies allege that they commanded Williams to drop the machete, and Woodrum alleged that he said something to the effect of "I'm going to shoot him," and that Williams yelled something like "let's go" or "let's do it." [Woodrum Tr. 42]. The deputies opened fire from what they claim was a distance of 15 to 20 feet, and Williams was hit by nine of ten rounds, fell to the ground, and died from his injuries.

One eye witness, Brian Cain, testifies that before Williams was shot he stood still with his hands in the air, saying "Here I am, here I am." Brian Cain did not recollect any object in Williams' hands. [Cain Tr. 23-24]. Another witness, Richard Denis, testified that he watched a law enforcement agent move the machete with his foot several feet closer to Williams' body. [Denis Tr. 15-16].

Plaintiff Mark Williams brought suit on behalf of Shane Williams' estate. He asserts federal

claims under 42 U.S.C. § 1983, as well as state law claims against Defendants Kitsap County, the deputies, and the deputies' marital communities ("Defendants"). Defendants moved for summary judgment seeking dismissal of all claims. [Dkt. # 4]. This Court denied the motion as to deputy liability, finding that there was a triable issue of fact as to whether the deputies had violated Shane Williams' Fourth Amendment rights by using excessive force against him. [Dkt. # 27]. The County's Motion for Summary Judgment was stayed under Fed. R. Civ. P. 56(f), and is now before the Court.

Defendants argue that there is no basis to hold the County liable for the actions of its officers. Plaintiff opposes the County's Motion for Summary Judgment, and alleges that the County is liable for failing to train its officers adequately in the use of excessive force because such failure amounted to a County policy. To bolster his claim, Plaintiff points to testimony from Undersheriff Bonneville, who suggested that officers should give verbal commands to "stop" or "drop" a weapon, but did not suggest that any warnings that the officers may shoot are required or are part of the County's training. [Bonneville Dep. Dkt. 41, Att. 2 at 119-121]. Additionally, the County submitted a declaration from Joseph Fountain, whom they offer as an expert witness in the field of officer training. Fountain asserts that, to his knowledge:

> no law enforcement training mandates specific language for verbal commands in deadly-force encounters. While some training proposes officers give a warning when feasible, I have never heard of any training that suggests the commands contain a warning of the intent to use deadly force, or a requirement to additionally inform the suspect of the consequences if he or she refuses to obey the officer's command.

[Fountain Decl., Dkt. # 46 at 2]. Plaintiff offers the expert testimony of D.P. Van Blaricom, who claims that proper police training includes instructing officers to give warnings of the intent to use deadly force when feasible. [Dkt. # 42 at3]. Plaintiff also claims that the County failed to follow many of its policies and procedures, and that the County ratified the deputies' allegedly unconstitutional conduct, and that for these reasons the County is liable under *Monell*.

## II. Discussion

## A. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220. In deciding whether summary judgment is appropriate, the court resolves ambiguities and draws all permissible factual inferences against the moving party. *See Anderson*, 477 U.S. at 255.

## B. *Monell* Liability

Plaintiff brings suit under 42 U.S.C. § 1983, alleging that the County's failure to train its officers with respect to the constitutional use of deadly force amounted to a policy of deliberate indifference. Defendants assert that there is no evidence that the training program is inadequate or that failure to train amounts to deliberate indifference to the rights of those with whom the police come in contact. Section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any... person... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

A municipality is a "person" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs. of New York*

*City*, 436 U.S. 658, 689 (1978). However, § 1983 is not a font of tort law, *see Paul v. Davis*, 424 U.S. 693, 701 (1976), and a municipality is not liable under § 1983 under a *respondeat superior* theory, *Monell*, 436 U.S. at 691. Instead, a municipality can be sued where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. The plaintiff must establish that the deliberate conduct of the municipality was the "moving force" behind the constitutional injury. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiff complains that the County had a policy of failing to train its officers as to the appropriate use of deadly force. "There are limited circumstances in which an allegation of a "failure to train" can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). To be liable for a failure to train, the plaintiff must show that (1) he was deprived of a constitutional right; (2) in failing to train its officers, the County must have evidenced "deliberate indifference" to the constitutional rights of its inhabitants, and (3) with proper training, plaintiff's constitutional injury would have been avoided. *See City of Canton*, 489 U.S. at 388-89.

**1.** *There is an issue of fact as to whether Williams was deprived of a constitutional right.*

This Court has already concluded that Plaintiff has raised a triable issue of fact as to whether the deputies shot Williams in violation of the Fourth Amendment. [*See* Dkt. # 27]. Shooting an individual constitutes a "seizure" within the meaning of the Fourth Amendment. To determine whether a seizure comports with the Fourth Amendment, courts must determine whether the officers' conduct was "objectively reasonable under the circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).

Plaintiff alleges that, even accepting the deputies' version of events, their failure to warn Williams that they intended to use deadly force violated the Fourth Amendment. In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court addressed a situation in which an officer shot an apparently unarmed,

suspected felon who was fleeing. The officer yelled "police, halt" as the suspect crouched at the base of a fence. *Id.* at 4. As the suspect began climbing the fence, the officer shot him to prevent his escape. *Id.* The Court held that deadly force is not unreasonable when used to prevent escape by a suspect who poses a threat of serious physical harm. *Id.* at 11. The Court noted that "if the suspect threatens the officer with a weapon... deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* at 11-12. The Court's reasoning suggests that presence of warnings are an important factor in whether or not deadly force is reasonable within the meaning of the Fourth Amendment.

Here, the objective reasonableness of the officer's having failed to warn Williams that they would shoot is a question for the jury. *See Adams v. Speers*, 473 F.3d 989, 993 (9th Cir. 2007). Accepting Plaintiff's version of the facts, a rational trier of fact could find that the officers' failure to warn Williams that they would shoot was unreasonable, particularly in light of the distance they were from him, their proximity to their patrol cars, the fact that they were armed with firearms while Williams was armed, if at all, with a machete. Therefore, Plaintiff has established a constitutional violation.

**2. *A rational trier of fact could find that the County's failure to train its officers to give warnings of impending deadly force evidenced deliberate indifference to constitutional rights.***

Deliberate indifference usually requires that the municipality make "a deliberate choice to follow a course of action... from among various alternatives." *City of Canton*, 489 U.S. at 389. Deliberate indifference can also be found when "in light of the duties assigned to specific officers... the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [the policymakers] can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. The Ninth Circuit has referred to the obviousness of need for training as the equivalent of constructive notice, and has noted that it is "another way of saying that there needs to be some evidence that tends to show a conscious choice." *See Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008).

Here, viewing the evidence in the light most favorable to the plaintiff, the evidence suggests that the County did not train its officers to warn individuals that deadly force could result from failure to follow police commands. The failure to give warnings when feasible is likely to result in at least some unreasonable seizures violative of Fourth Amendment rights. Whether this failure rises to the level of deliberate indifference is a question for the trier of fact, but a rational trier could find that the failure to train officers to warn about the infliction of deadly force when feasible constitutes a policy of deliberate indifference.

**3. *There is an issue of material fact as to whether the failure to train was the moving force behind the constitutional violation.***

The failure to train must also be the "moving force" behind the constitutional violation. *City of Canton*, 489 U.S. at 389-91. There is an issue of material fact as to whether issuing a warning to Williams would have been feasible. Viewing the facts in the light most favorable to the plaintiff, a rational trier of fact could find that had the County properly trained its officers to give warnings before using deadly force when feasible, that Williams would have been warned and may have complied with the officers' requests, thereby avoiding his death.

### III. Conclusion

Plaintiff has introduced sufficient evidence to create an issue of material fact as to whether a constitutional violation occurred, and whether that alleged injury resulted from the County's alleged policy of failing to train officers to give warnings, when feasible, that deadly force is imminent. The defendants take the position that a warning was neither necessary nor feasible. These are issues for the jury to resolve. Therefore, Defendant Kitsap County's Motion for Summary Judgment [Dkt. # 4] is

DENIED with respect to Plaintiff's *Monell* claim against it.

Dated this 19th day of May, 2009.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER
Page - 8