1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

MARK WILLIAMS, *et al.*,

                              Plaintiffs,

        v.

KITSAP COUNTY, *et al.*,

                              Defendants.

No. CV 08-5430-RBL

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT

12
13
14
15
16
17
18
19
20
21
22
23

        This matter comes before the court on competing Motions for Summary Judgment

directed at Plaintiffs' Fourth Amendment Complaint. Plaintiff Williams, joined by plaintiff

Gould, requests a summary judgment that the police violated Shane Williams' Fourth

Amendment rights, and that Kitsap County is liable for their actions. [Dkt. #143] Plaintiff Gould

requests summary judgment on her claim that the police violated her Fourth Amendment rights

in the aftermath of the shooting. [Dkt. #144] Defendant Olson claims that he is entitled to

qualified immunity and requests summary judgment on Gould's claims against him. [Dkt. #148]

Defendants Herrin, Woodrum, Cleere, and Kitsap County (Kitsap County Defendants) request

summary judgment on Gould's claims against them. [Dkt. #154] For the reasons below, these

claims are DENIED.

24

**A.      Factual Summary**

25
26

        This case arises from a confrontation between twenty-six year old Shane Williams and

Kitsap County Sheriff's Deputies Ben Herrin and Paul Woodrum on May 16, 2006, and the

ORDER - 1

subsequent interactions between law enforcement officers and Shane Williams' mother, Cecilia Gould.

### 1.    Shane Williams

Shane Williams lived at 3742 E Street with his mother and step-father. Around four o'clock on the morning of May 16, 2006, Shane Williams called 911 and stated "I need a Cop at 3742 E Street." Deputies Herrin and Woodrum responded and encountered Williams outside the house. Williams approached the deputies with a machete held in his right hand. Both Herrin and Woodrum repeatedly yelled to Williams to drop his weapon. Woodrum said something to Herrin to the effect of "I'm going to shoot him." According to Woodrum, Williams yelled something like "let's go" or "let's do it." Herrin and Woodrum then opened fire. Of the ten rounds they fired, nine struck Williams. Williams died at the scene.

The parties agree to this general timeline of events. However, the parties dispute some specific facts, such as whether Shane Williams was holding the machete and whether he was threatening the deputies at the time he was shot. [Dkt. #27] Plaintiffs claim that Deputies Herrin and Woodrum violated Shane Williams' Fourth Amendment rights because the deputies used deadly force unreasonably and failed to sufficiently warn Williams before shooting him. Plaintiffs claim that Kitsap County is liable for the actions of Deputies Herrin and Woodrum.

### 2.    Cecilia Gould

Cecilia Gould, Shane's mother, and her husband went to sleep about ten o'clock the night of May 15, 2006. They were awakened by gunshots early the next morning. When she looked through her window, Mrs. Gould saw police gathered outside her house. Both Mrs. and Mr. Gould went out their front door to the front porch. At this point, Mrs. Gould wore a nightgown with sweatpants underneath and Mr. Gould was shirtless. [Dkt. #144]

ORDER - 2

By the time Mrs. and Mr. Gould went to their front door, other law enforcement officers had arrived on the scene. When officers noticed the Goulds at the front door, Sergeant Olson trained his gun on the couple. Other officers drew their weapons and pointed them toward the Goulds. None of the officers knew Mrs. Gould, or her relationship to Shane Williams. [Dkt. #170] Deputy Herrin ordered the Goulds off the porch. Deputy Woodrum handcuffed them with assistance from Sergeant Olson and Officer Cleere. An officer escorted the Goulds from their property and sat them upon a curb. After about twenty or twenty-five minutes, Sergeant Olson removed Mrs. and Mr. Goulds' handcuffs and placed them in separate patrol cars. They were later moved to the same patrol car. At all times, Mrs. Gould was cooperative with law enforcement officers. When she was released from the patrol car after possibly an hour or more, Mrs. Gould learned of her son's death. Mrs. Gould claims that Defendants used excessive force and arrested her without probable cause in violation of the Fourth Amendment.

**B.    Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words,

ORDER - 3

"summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### C. Mark Williams' Motion for Summary Judgment on the Violation of Shane William's Fourth Amendment Rights

Plaintiff Mark Williams moves for summary judgment on his claim that defendants Herrin and Woodrum violated Shane Williams' Fourth Amendment rights. Plaintiff Cecilia Gould joins this motion. Plaintiffs argue that the deputies failed to verbally warn Shane Williams of their intent to shoot, and therefore the shooting constituted an excessive use of force in violation of the Fourth Amendment. Plaintiffs further contend that defendant Kitsap County is liable for defendants Herrin and Woodrum's actions.

#### 1. A Verbal Warning Is Not Constitutionally Mandated, But the Use of Force Must Be Reasonable

A law enforcement officer's use of force is constrained by the Fourth Amendment. An officer may only use such force as is reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Reasonableness" is judged from the perspective of a reasonable officer on the scene. *Id*. To determine the reasonableness of an officer's use of force, the force applied should be balanced against the need for that force. *Headwaters Forest Defense v. County of Humboldt (Headwaters II)*, 276 F.3d 1125, 1130 (9th Cir. 2002).

The Supreme Court applied this reasonableness requirement to an officer-involved shooting in *Tennessee v. Garner*, 471 U.S. 1, 12 (1985). In *Garner*, an officer shot a burglar in the back of the head as he fled on foot. The Court held that the officer could not have reasonably believed that the fleeing suspect posed a threat. *Id*. To reach its conclusion, the Court conducted a three-part analysis into whether the officer's actions were reasonable: (1) the suspect must have

ORDER - 4

posed an immediate threat; (2) deadly force must have been necessary to prevent escape; and (3) the officer must have given a warning, if feasible to do so. *Id*. at 11-12.

Plaintiffs' motion rests upon the third part of the *Garner* reasonableness inquiry. Specifically, Plaintiffs' assert that a warning is constitutionally mandated before a law enforcement officer may use deadly force, if feasible. They claim that Deputies Herrin and Woodrum gave no warning, though it was feasible to do so.

However, the Supreme Court later held that *Garner* did not establish "preconditions whenever an officer's actions constitute 'deadly force.'" *Scott v. Harris*, 550 U.S. 372, 382 (2007). The Court stated that "*Garner* was simply an application of the Fourth Amendment's 'reasonableness' test to the use of a particular type of force in a particular situation." *Id*. A Fourth Amendment inquiry is not different if deadly force is involved, "all that matters is whether [the officer's] actions were reasonable." *Id*. at 393. In *Scott*, the Court held that no warning was necessary before performing a high-speed disabling maneuver on a suspect who fled in a car and threatened the safety of others on the road. *Id*.

Furthermore, defendants assert that Williams was given sufficient warning by Deputies Herrin and Woodrum to survive summary judgment, even under a *Garner* analysis. Herrin and Wodrum repeatedly ordered Williams to drop his weapon and get on the ground as the deputies pointed their guns at him, and Woodrum shouted to Herrin his intention to shoot. Unlike the fleeing defendant in *Garner*, Williams may have had plenty of opportunity to know he was about to be shot.

If all reasonable factual inferences are made in favor of Defendants, this Court cannot rule that Defendants acted unreasonably as a matter of law. Deputies Herrin and Woodrum reported that Williams approached and threatened them with a machete, even as the deputies

ORDER - 5

trained their guns on Williams and ordered him to stop. Woodrum further claims that he clearly communicated his intention to shoot. A reasonable juror could find that the deputies acted reasonably to protect themselves when faced with the machete-wielding Williams.

        **2.**       ***Monell* Municipal Liability Requires an Underlying Constitutional Violation**

Plaintiffs seek judgment that Kitsap County is liable for defendants Herrin and Woodrum's Fourth Amendment violations under *Monell v. New York City Dept. of Social Services*, 436 U.S. 685, 694 (1978). A plaintiff that alleges liability of a municipality for civil rights violations must prove three elements: (1) a violation of his/her constitutional rights, (2) the existence of a municipal policy or custom of the municipality, and (3) a causal nexus between the policy or custom and the constitutional violation. *Monell*, 436 U.S. at 691. Since this Court does not find a constitutional violation as a matter of law, Plaintiffs cannot meet the first element and thus their *Monell* claim fails.

For the reasons stated above, Plaintiffs' Motion for Summary Judgment on Fourth Amendment claims related to Shane Williams is therefore DENIED.

**D.**    **Plaintiff Gould's Motion for Summary Judgment on the Violation of Her Fourth Amendment Rights**

Plaintiff Cecilia Gould moves for summary judgment on her claim that law enforcement officers illegally seized her in violation of the Fourth Amendment. She claims that Defendants used excessive force and illegally seized her when officers pointed guns at her, placed her in handcuffs, and detained her in a squad car. Gould also claims that these actions constituted arrest without probable cause.

### 1. Gould's Claim of Excessive Force and Unreasonable Seizure

The Defendants admit that they pointed their weapons at her, handcuffed Ms. Gould, and detained her in a squad car. She asserts that Defendants did not need to use any force against her, since she was unarmed, cooperative, and did not pose an immediate threat.

A law enforcement officer may only use such force as is reasonable under the circumstances. *Graham*, 490 U.S. at 397. "Reasonableness" is judged from the perspective of a reasonable officer on the scene. *Id*. To determine the reasonableness of an officer's use of force, the force applied should be balanced against the need for that force. *Headwaters II*, 276 F.3d at 1130. If no force is necessary, "any force used is constitutionally unreasonable." *Headwaters Forest Defense v. County of Humboldt (Headwaters I)*, 240 F.3d 1185, 1199 (9th Cir. 2000).

Plaintiff compares her case to *Tekle v. United States*, 511 F.3d 839 (9th Cir. 2006) and *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002) (*en banc*). In *Tekle*, police officers held an eleven year-old boy at gunpoint during a narcotics raid that targeted the boy's parents. *Tekle*, 511 F.3d at 846. The Ninth Circuit held that officers acted unreasonably because the boy was unarmed, outnumbered, and posed no threat. *Id*. at 848. In *Robinson*, officers pointed their guns at a man who was unarmed and cooperative after he identified himself as a misdemeanor suspect. *Robinson*, 278 F.3d at 1010. The court considered that there was one suspect and multiple officers, the circumstances were not dangerous, and the possible charge was a misdemeanor, and concluded that officers' use of force was unnecessary. *Id.* at 1011.

The reasonableness of a law enforcement officer's actions is judged from the perspective of a reasonable officer given the totality of the circumstances. *Graham*, 490 U.S. at 397. The circumstances surrounding Gould's encounter with officers are important here, and distinct from *Tekle* and *Robinson*. Deputies Herrin and Woodrum shot a machete-wielding Williams shortly

before the Goulds appeared at the front door. None of the officers knew Williams, nor did they know who lived in the house or whether they had weapons. A reasonable juror could conclude that officers acted appropriately when they confronted an unknown person with their guns drawn, given the events of that morning. The amount of force used by the officers, and whether it was excessive in the circumstances, is likewise a factual question and will not be resolved on summary judgment.

### 2. Gould's Claim of Arrest Without Probable Cause

Gould argues that she was arrested without probable cause when officers held her at gunpoint, placed her in handcuffs, and detained her in a squad car. Law enforcement officers may only arrest a suspect when the officer has probable cause to think a crime has been or is being committed. However, an arrest does not occur in every instance that an officer uses force to detain a person. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). An officer may legitimately detain a person as part of an investigatory stop (*Terry* stop) if the officer has a reasonable suspicion that criminal activity is "afoot." *Id*. at 23. The amount of time a person is held has little bearing on whether a detention is an arrest without probable cause. A person might be detained for hours, but not arrested as a matter of law, due to exigent circumstances involved in a police investigation. *Muehler v. Mena*, 544 U.S. 93, 98 (2005).

In *Muehler*, the Court held that state interests outweighed the temporary burden upon the liberty of inhabitants of a house who were detained as officers searched the house. The Court held that the state had important interests in preventing flight in the event incriminating evidence was found, minimizing risk of harm to officers, and facilitating an orderly search. *Id*.

Gould compares her detention to cases where a court found shorter or less severe detentions to be arrests rather than investigatory stops. *See United States v. Robertson*, 833 F.2d

ORDER - 8

777, 781 (9th Cir. 1987) (holding that officers arrested a woman when they held a woman at gunpoint and detained her for between five to fifteen minutes); *United States v. Del Vizo*, 918 F.2d 821 (9th Cir. 1990) (holding that officers arrested a suspect when they pointed a gun at a cooperative suspect, put him in handcuffs, and detained him in a car); *but see Gallegos v. Los Angeles*, 308 F.3d 987 (9th Cir. 2002) (holding that a seizure at gunpoint followed by a 45 minute detention was an investigatory stop). In the cases cited by Gould, the court held that an arrest was made because there was insufficient investigatory justification for continued detention.

A reasonable juror could conclude that officers confronted Cecilia Gould after recently confronting an armed individual, and thus they had concerns about officer safety and could reasonably suspect criminal activity in the immediate area. Defendants maintain that they detained Mrs. Gould in order to facilitate the investigation and minimize risk at a potentially dangerous scene. After officers determined that Gould was not a threat, they temporarily detained her to facilitate their investigation, but removed the handcuffs and kept Mrs. Gould in a car with her husband. In the light most favorable to Defendants following the deputies' violent confrontation with Shane Williams, Defendants' treatment of Plaintiff Gould would not amount to an arrest and would constitute an investigatory *Terry* stop.

For the reasons above, plaintiff Gould's Motion for Summary Judgment on her Fourth Amendment claims are therefore DENIED.

**E.  Defendant Olson's Motion for Summary Judgment on Gould's Fourth Amendment Claims**

Defendant Olson seeks a ruling that he did not violate Cecilia Gould's Fourth Amendment rights. Olson claims that he did not seize Mrs. Gould, that he acted reasonably when he pointed his gun at Mrs. Gould, and that he is entitled to qualified immunity.

ORDER - 9

### 1. Sergeant Olson Seized Cecilia Gould When He Restrained Her Freedom of Movement

Olson argues that he did not seize Gould because he was not the officer who placed Gould in handcuffs, interviewed Gould, or detained Gould in the squad car. Gould maintains that Olson seized her when Olson pointed his gun at Gould and she was ordered out of the house.

"[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendehall*, 446 U.S. 544, 553 (1980). An officer may seize a suspect without making physical contact. *United States v. Manzo-Jurado*, 457 F.3d 928, 933-34 n.3 (9th Cir. 2006).

In this case, Sergeant Olson pointed his gun at Cecilia Gould as she stood in her doorway. This action was a show of authority that was intended to, and did, induce Gould to comply with officers' orders to exit the house and kneel on the ground to be handcuffed. Gould's freedom of movement was thus restricted, no reasonable person would turn back into the house at that point. Since Olson's show of authority restrained Cecilia Gould's freedom of movement, his actions constitute a seizure.

### 2. Sergeant Olson's Claim of Reasonableness

Sergeant Olson contends that he acted reasonably when he aimed his firearm at Mrs. Gould as she stood at her front door. A law enforcement officer may only use such force as is reasonable under the circumstances. *Graham*, 490 U.S. at 397. "Reasonableness" is judged from the perspective of a reasonable officer on the scene. *Id*. An officer may point his gun at a subject if the officer reasonably believes force is necessary to protect himself or others. *See United*

*States v. Taylor*, 716 F.2d 701 (9th Cir. 1983). However, if the use of force is unnecessary, pointing a gun at a subject constitutes excessive force. *Robinson*, 278 F.3d at 1010.

Sergeant Olson contends that he acted reasonably because he believed the scene was not yet secure and his use of force was necessary in the circumstances. Olson believed his use of force was necessary until he determined that Mrs. and Mr. Gould did not present a threat. Plaintiff Gould argues that this case is like *Robinson*, officers acted with excessive force when they trained guns on a cooperative, unarmed suspect and force was unnecessary to ensure the safety of the several officers on site. *Robinson*, 278 F.3d at 1011.

If all inferences are made in favor of the plaintiff, Sergeant Olson's use of force was unnecessary. Mrs. and Mr. Gould appeared at their door barefoot and in their bedclothes. They were unarmed and made no threatening moves toward the police. A reasonable juror could conclude from these facts that force was not necessary to induce Mrs. Gould to comply with police orders and check her for weapons. A juror could therefore find that Sergeant Olson's use of force was unnecessary and unreasonable.

### 3. Sergeant Olson's Claim of Qualified Immunity

Olson claims that, even if he did violate Cecilia Gould's constitutional rights, he is entitled to qualified immunity. The test for qualified immunity has two parts: (1) whether a constitutional right was violated on the facts alleged, taken in the light most favorable to the plaintiff, and (2) whether the right was clearly established in context of the case. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

If taken in the light most favorable to the plaintiff, Sergeant Olson may have acted unreasonably when he pointed his weapon at the unarmed and cooperative Mrs. Gould. The Ninth Circuit recognized in 2002 that pointing a gun at a suspect can constitute excessive force

ORDER - 11

when the use of force is unnecessary. *Robinson*, 278 F.3d at 1011. Since the law was clearly established before the events leading to this case, qualified immunity is unavailable here.

For the reasons above, defendant Olson's Motion for Summary Judgment on plaintiff Gould's Fourth Amendment claims is DENIED.

**F.    Kitsap County Defendants Motion for Summary Judgment on Gould's Fourth Amendment Claims**

Kitsap County Defendants ask the Court to dismiss Cecilia Gould's Fourth Amendment. Defendants claim that the detention of Mrs. Gould was reasonable and that Kitsap County is not subject to *Monell* liability for the actions of the law enforcement officers. Defendants argue that the seizure of Mrs. Gould as part of an investigative stop did not violate the Fourth Amendment. They claim that the exigency of the circumstances justified the officers' decision to detain Gould.

A law enforcement officer may only use such force as is reasonable under the circumstances. *Graham*, 490 U.S. at 397. "Reasonableness" is judged from the perspective of a reasonable officer on the scene. *Id*. To determine the reasonableness of an officer's use of force, the force applied should be balanced against the need for that force. *Headwaters II*, 276 F.3d at 1130.

Cecilia Gould was unarmed, barefoot, and in her bedclothes when officers detained her in handcuffs and then in a squad car. During that time, Mrs. Gould was entirely cooperative and greatly outnumbered by law enforcement personnel. If all inferences are taken in favor of the plaintiff, a juror might conclude that officers had sufficient control of the scene following the shooting of Shane Williams and did not need to handcuff and  hold Cecilia Gould in order to facilitate the investigation. A reasonable juror could therefore conclude that the detention of Mrs. Gould was unnecessary and unreasonable.

ORDER - 12

For the reasons above, the Kitsap Defendants' Motion for Summary Judgment on plaintiff Gould's Fourth Amendment claims is DENIED.

**CONCLUSION**

Viewed in light most favorable to Defendants, the evidence does not support Plaintiffs' claims that Defendants used excessive force when they shot Shane Williams. Plaintiffs' Motion [Dkt. #143] on the basis of unreasonable seizure is DENIED.

Likewise, evidence does not support Plaintiff Gould's claim that Defendants used unreasonable force and arrested her without probable cause. Defendants' seizure of Gould constituted an investigatory *Terry* stop. Plaintiff Gould's Motion [Dkt. #144] on the basis of unreasonable seizure and arrest without probable cause is DENIED.

However, if viewed in the light most favorable to Plaintiff Gould, the evidence does support Gould's claim that Defendants used excessive force when they pointed their guns at, handcuffed, and detained her. Defendant Olson's actions constituted a seizure and the law of unreasonable seizure was clear at the time of the events leading to this case. Defendant Olson's Motion [Dkt. #148] to dismiss Gould's unreasonable seizure claim and asserting a defense of qualified immunity is DENIED. The Kitsap Defendants' Motion [Dkt. #154] that seeks to dismiss Plaintiff Gould's unreasonable seizure claim is also DENIED.

IT IS SO ORDERED.

Dated this 16th day of December, 2009.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER - 13